**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| LSF9 MASTER PARTICIPATION TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N16L-03-181 EMD |
| | ) | |
| GREGORY TUCKER aka GREGORY L. | ) | NON-ARBITRATION |
| TUCKER aka GREG L. TUCKER and | ) | |
| KAREN TUCKER aka KAREN K. TUCKER, | ) | In Rem |
| | ) | Mortgage Record 20080917-0062897 |
| Defendants. | ) | Parcel No. 10-034.30-137 |
| | ) | |

**MEMORANDUM OPINION GRANTING MOTION
FOR SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF**

**DAVIS, J.**

## I. INTRODUCTION

This is an in rem foreclosure action arising from Plaintiff LSF9 Master Participation Fund's mortgage (the "Mortgage")[1] with Defendants Gregory L. Tucker and Karen K. Tucker. The Mortgage covers property located at 1504 Goldeneye Court in New Castle, Delaware (the "Property"). On March 30, 2016, LSF9 Master Participation Fund ("LSF9") filed a *scire facias sur* mortgage complaint against Mr. Tucker and Ms. Tucker (the "Tuckers") seeking foreclosure of the Tuckers' interest in the Property. After the Tuckers answered the complaint, LSF9 filed its Motion for Summary Judgment in Favor of Plaintiff (the "Motion"). LSF9 argues that summary judgment is appropriate because the Tuckers failed to plead one of the legally recognized defenses available in a *scire facias sur* mortgage action. The Tuckers filed a Motion to Dismiss Summary Judgment, opposing the relief sought by LSF9. The Tuckers are representing themselves *pro se* and claim to be Aboriginal Indigenous Moorish-Americans who are free from the jurisdiction of the Court.

---

[1] *See* Compl., Ex. A.

On January 23, 2017, the Court held a hearing on the Motion. All parties appeared at the hearing and were allowed to present their arguments for or against the relief sought by LSF9. After hearing from the parties, the Court took the Motion under advisement. For the reasons set forth below, the Court **GRANTS** the Motion.

## II. FACTUAL BACKGROUND

On September 11, 2008, the Tuckers executed and delivered the Mortgage on the Property to SurePoint Lending abn First Residential Mortgage Network, Inc. ("SurePoint").[2] The Mortgage acts as the security instrument for a residential loan in the amount of $323,023.00 between the Tuckers, identified as the "Borrower," and SurePoint, identified as the "Lender."[3] SurePoint then assigned its entire interest in the Mortgage to BAC Home Loans Servicing LP, which in turn assigned its entire interest in the Mortgage to Bank of America.[4] After that, Bank of America assigned its entire interest in the Mortgage to Secretary of Housing and Urban Development, which in turn assigned its entire interest in the Mortgage to LSF9.[5]

The Tuckers then failed to make their monthly installment payments. LSF9 demanded payment and informed the Tuckers that it would, pursuant to the Mortgage, accelerate the balance due if the Tuckers did not render payment. The Mortgage provides that:

**9.  Grounds for Acceleration of Debt.**

   **(a)  Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

   (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

---

[2] *See id.*
[3] *See id.*
[4] *See id.*
[5] *See id.*

> (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Agreement[6]

> **18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose the Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees of 5% of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the degree of judgment) and costs of title evidence . . . .[7]**

To date, the Tuckers have failed to render payment in full. As a result, LSF9 gave the Tuckers forty-five days' notice of its intent to foreclose on the Mortgage.

On March 30, 2016, LSF9 filed a *scire facias sur* mortgage complaint (the "Complaint") against the Tuckers seeking foreclosure of the Tuckers' interest in the property. On or about April 28, 2016, LSF9 served the Tuckers with the Complaint by leaving a copy with Mr. Tucker. On May 4, 2016, the Tuckers filed an Answer (the "Answer") to the Complaint. The Answer raises a number of allegations and defenses. The Answer is not a paragraph by paragraph response to the allegations raised in the Complaint; instead, the Answer sets forth a series of "disputes" regarding the Mortgage, deed of trust, the assignments, the promissory note and the forty-five notice.[8] In addition, the Answer provides a number of civil actions involving Mortgage Electronic Registration Systems, Inc., and a legal position regarding the difference between payment and discharge under Federal Reserve Notes.[9]

The parties scheduled a mediation conference for July 6, 2016. At the mediation conference, the Tuckers were offered a trial payment plan and were given until July 31, 2016 to accept the offer. The mediation conference was continued until August 3, 2016. The Tuckers

---

[6] Compl., Ex. A ¶9.
[7] *Id.*, Ex. A ¶ 18.
[8] *See* Defs.' Ans. at ¶¶ 3, 4, and 5.
[9] *See id*. at ¶¶ 2 and 6.

failed to appear at the August 3, 2016 mediation conference and a Final Mediation Record was entered.

On September 30, 2016, LSF9 filed the Motion, arguing that the Tuckers failed to plead one of the legally recognized defenses in a *scire facias sur* mortgage action. LSF9 filed a loss mitigation affidavit concurrently with the Motion. LSF9 also provided copies of the Mortgage and the proofs assignment as exhibits to the Complaint.[10]

On November 3, 2016, the Tuckers filed a Motion to Dismiss Summary Judgment (the "Response"), which the Court treated as the Tuckers' response to the Motion.[11] In the Response, the Tuckers assert various allegations and defenses, most related to their self-proclaimed status as Aboriginal Indigenous Moorish-Americans. Among the items filed by the Tuckers and considered by the Court were:

- The Response and all attachments;

- Notice of Public Records Correction with attached Judicial Notice and Proclamation;

- Treaty of Peace and Friendship between the United States of America, and His Imperial Majesty the Emperor of Morocco;

- The Zodiac Constitution;

- United Nations Declaration on the Rights of Indigenous Peoples;

- House of Representatives Congressional Record—Senate Extract from the [sic] 1916 and attachment regarding James Anthony Traficant, Jr.;

- Pope Francis Sends Obama Powerful Letter Via Attorney [on] July 4th 2016;

- Fiduciary Request Reconveyance dated January 18, 2017;

- Transfer of Inheritance between United States of America Corporation and Greg/Karen El;

---

[10] *See* Compl., Ex. A.
[11] *See* Court's Letter to the parties dated November 21, 2016.

- Affidavit of Financial Statement (Exercise of Constitution—Secured Right);

- Writ of Mandamus Case No. N16L-03181-EMD, seeking to compel the Court to honor the Reconveyance discharge;

- Averment of Jurisdiction—Quo Warranto;

- Writ of Discovery, Affidavit of Fact, Certified Delegation of Authority Order;

- The Constitution of the United States of America—Literal Print;

- The Thirteenth Amendment, highlighting section 12 of the Amendment;

- A document entitled "The Clearfield Doctrine;"

- Affidavit of Walker F. Todd, Expert Witness for Defendants (the "Todd Affidavit");[12]

- Attorney License Fraud; and

- The Bull Inter Caetera.

### III.  PARTIES' CONTENTIONS

LSF9 contends that the Tuckers did not plead payment, satisfaction, or avoidance of the mortgage in the Answer — one of the three allowable defenses in a *scire facias sur* mortgage action.   LSF9 argues that the Tuckers instead only plead conclusory denials that do not create a genuine issue of material fact.

The Tuckers set forth various allegations and defenses in the Answer, including that they "have no recollection of any alleged mortgage agreement between the defendants and SurePoint Mortgage Lending."[13]  The Tuckers also allege that LSF9 "breached its fiduciary duty," engaged in "deceptive trade practices," forced "improper foreclosure using unlawful practices," and "unjustly enrichment unconscionable use of quasi contract."[14]  The Tuckers then structure the Response as a motion to dismiss, asking the Court to dismiss the action for lack of personal

---

[12] As submitted, the Todd Affidavit is not signed.
[13] Defs.' Ans. ¶1.
[14] *Id.* ¶7.

jurisdiction, lack of subject matter jurisdiction, insufficient process, insufficient service of process, improper venue, and failure to state a claim upon which relief can be granted. The additional items submitted by the Tuckers generally relate to their arguments regarding lack of jurisdiction. The Tuckers only provide the Court with one affidavit and that is an affidavit from Mr. Todd as an "expert witness."

## IV. STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[15] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[16] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[17] The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[18] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[19]

## V. DISCUSSION

---

[15] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99–100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).
[16] *Id.*
[17] *See Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").
[18] *See Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).
[19] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

In addition to the right of a mortgagee to foreclose on a mortgage in equity, Delaware law allows a mortgagee the additional remedy of enforcing the mortgage by writ of *scire facias* in the Superior Court.[20] This right is codified in 10 *Del. C.* section 5061, which provides that:

> [U]pon breach of the condition of a mortgage or real estate by nonpayment of the mortgage money or nonperformance of the condition stipulated in such mortgage . . . the mortgagee, the mortgagee's heirs, executors, administrators, successors, or assigns may, at any time after the last day whereon the mortgage money ought to have been paid or other conditions performed, sue out of the Superior Court . . . a writ of scire facias upon such mortgage directed to the sheriff . . . commanding the sheriff to make known to the mortgagor . . . and such mortgagor's heirs, executors, administrators, or successors that the mortgagor or they appear before the Court to show cause, if there is any, why the mortgaged premises ought not to be seized and taken in execution for payment of the mortgage money with interest to satisfy the damages which the plaintiff in scire facias shall, upon the record, suggest for the nonperformance of the conditions.[21]

In essence, a writ of *scire facias sur* mortgage is a rule to show cause that requires the mortgagor to appear and establish why the mortgagee should not be allowed to foreclose.[22] Because of this established purpose, Delaware law limits the defenses available to a mortgagor in this type of foreclosure action.[23]

### A. Summary Judgment is appropriate because the Tuckers do not plead one of the legally recognized defenses in a *scire facias sur* mortgage action.

Generally, in a *scire facias sur* mortgage action, a mortgagor is permitted to plead only those claims or counterclaims arising under the mortgage itself.[24] This is limited to three defenses: payment, satisfaction, or avoidance of the mortgage.[25] A plea in avoidance, however,

---

[20] *See American Nat. Ins. Co. v. G-Wilmington, Assoc., LLP.*, C.A. No. 02L-05-114, 2002 WL 31383924, at *2 (Del. Super. Oct. 18, 2002) (tracing the history of the Pennsylvania *scire facias* act to explain the remedy of *scire facias sur* mortgage in Delaware).

[21] 10 *Del. C.* § 5061.

[22] *American Nat. Ins. Co.*, 2002 WL 31383924, at *2; *see also Davenport Servs., Inc. v. Five North Corp.,* C.A. No. 01L-04-101, 2003 WL 21739066, at *2 (Del. Super. May 19, 2003) (observing that a *scire facias* mortgage action derives from a writ of *scire facias* which requires "the mortgagor to show cause why judgment should not be given against him for the amount of the mortgage debt with a special execution for the sale of the mortgaged premises").

[23] *Christiana Falls, L.P. v. First Fed. Sav. & Loan Ass'n of Norwalk*, 520 A.2d 669 (table) (Del. 1986).

[24] *American Nat. Ins. Co.*, 2002 WL 31383924, at *2.

[25] *Id.*

must "relate to the mortgage sued upon, i.e., the plea must relate to the validity or illegality of the mortgage documents."[26] Traditionally recognized avoidance defenses include: "acts of God, assignment, conditional liability, duress, exception, forfeiture, fraud, illegality, justification, non-performance of condition precedents, ratification, unjust enrichment, and waiver."[27] If a mortgagor fails to assert one of these legally recognized defenses, the mortgagee is entitled to summary judgment.[28]

Here, LSF9 alleges that the Tuckers are in default on their mortgage in the amount of $361,985.00 with interest, late charges, attorney's fees, and costs. In response, the Tuckers assert a number of vague and conclusory allegations in the Answer and the Response, none of which qualify as a legally recognizable defense to this type of foreclosure action. The Tuckers do not plead payment or satisfaction; in fact, they assert in the Answer that they "have no recollection of any alleged mortgage agreement between defendants and Sure Point Mortgage Lending executed on September 11, 2008."[29] The Tuckers also do not coherently plead avoidance. The Court acknowledges that the Tuckers do use the words "unjust enrichment" and "unconscionable" as it relates to LSF9's conduct.[30] However, the Tuckers make these claims under 18 *U.S.C.* § 641 — a federal criminal embezzlement statute that has nothing to do with the mortgage document itself or the foreclosure action.

---

[26] *Id.*

[27] *Id.*

[28] *See JPMorgan Chase Bank v. Hopkins*, C.A. No. N11L-09-289, 2013 WL 5200520, at *2 (Del. Super. Sept. 12, 2013 (granting summary judgment because no genuine issue of material fact existed where defendant did not plead payment, satisfaction, or avoidance of the mortgage); *Wells Fargo Bank, NA v. Nickel*, C.A. No. 11L-07079, 2011 WL 6000787, *2 (Del. Super. Nov. 18, 2011) (granting summary judgment because the "Defendant did not plead payment, satisfaction or avoidance of the mortgage in her Answer . . . Defendant has failed to set forth specific facts that a genuine issue of material fact exists and she has raised no defenses that may be properly asserted in an action for *scire facias sur* mortgage"); *CitiMortgage, Inc. v. Kine,* C.A. No. 09L-09-377, 2011 WL 6000755, at *2 (Del. Super. Nov. 1, 2011) (granting plaintiff mortgage company's motion for summary judgment where defendant asserted legal defenses and claimed she never received a copy of the Fair Debt Collections Practices Act).

[29] Defs.' Ans. ¶1.

[30] *See id.* ¶7.

8

Not only have the Tuckers failed to plead an allowable defense in this foreclosure action, the Court also notes that the Tuckers do not provide any support for the denials contained in the Answer or the Response. It is well established that mere denials in a pleading are insufficient under Civil Rule 56 to oppose a motion for summary judgment.[31] Instead, the party opposing a motion for summary judgment must come forward with admissible evidence, other than mere denials, showing the existence of a genuine issue of fact.[32]

Here, the Tuckers' Answer and Response are replete with conclusory allegations. For example, the Tuckers assert that they have no recollection of any alleged mortgage agreement. However, a mortgagor's conclusory assertion in a mortgage foreclosure action that he does not owe the money does not constitute admissible factual evidence and cannot be relied upon to raise a genuine issue of material fact.[33] Therefore, there is no genuine issue of material fact in this case and the Court can grant summary judgment.

The Court also notes that the other affirmative defenses raised by the Tuckers in the Response—lack of personal and subject matter jurisdiction, insufficient service of process, improper venue, and failure to state a claim upon which relief can be granted—are improper defenses in this type of foreclosure action.[34] These defenses are unrelated to the Mortgage. These defenses also do not plead payment, satisfaction, or avoidance of the mortgage. In addition to being improper defenses, the jurisdictional claims raised by the Tuckers are also facially frivolous. The Court has reviewed all documents submitted by the Tuckers and cannot find one that creates a genuine issue as to a material fact. The Todd Affidavit is illogical and

---

[31] *Kennedy v. Giannone*, 527 A.2d 732 (table) (Del. 1987).

[32] *Id.* (citing *E.K. Geyser Co. v. Blue Rock Shopping Center, Inc.*, 229 A.2d 499, 501 (Del. Super. 1967)).

[33] *Kennedy*, 527 A.2d at 732.

[34] *See CitiMortgage,* 2011 WL 6000755, at *2 (rejecting defendant's affirmative defenses, such as statute of limitations and failure to state a claim upon which relief can be granted, because they are unrelated to the mortgage and do not plead one of the allowable defenses in a *scire facias sur* mortgage action).

presents opinions that demonstrate that Mr. Todd is not knowledgeable about lending practices, currency or how a mortgage operates as to real property or even this particular civil action. As presented to the Court, the Todd Affidavit relates to a civil action taking place in the Circuit Court for the County of Oakland captioned *Bank One, N.A. v. Harshavardhan Dave and Pratima Dave*, Case No. 03-047448.

The Tuckers argue that the Court lacks jurisdiction over them based on their status as "Aboriginal Indigenous Moorish-Americans."[35] Despite being "born in America," it appears that the Tuckers are arguing that their self-proclaimed status and identification as Moorish-Americans divests United States courts of jurisdiction over them. No basis in law exists to support the Tuckers' contentions. All individuals residing in the United States are subject to civil liability and can be sued in both federal and state courts.[36] Whether or not an individual is or identifies as a United States citizen "has no bearing upon whether one can properly be a defendant in a foreclosure action.[37] Here, the Tuckers clearly reside in the United States and, as a result, are amenable to jurisdiction in this Court and can properly be named as defendants in the present foreclosure action.

On this same point, the Tuckers argue that this foreclosure action violates the Treaty of Peace and Friendship Between Morocco and the United States (the "Treaty with Morocco"). As explained by the court in *El Ameen Bey v. Stumpf*[38], "a litigant's reliance on the Treaty of Morocco for the purposes of a civil suit raising claims based on the events that occurred within

---

[35] Defs.' Resp. p. 1.
[36] *See Bank of America., N.A. v. Derisme*, C.A. No. 096004583S, 2010 WL 626498, at *2 (Conn. Super. Jan. 21, 2010) (rejecting the defendant's claim that she is not amenable to the jurisdiction of the court based on her status as an "Aboriginal Moorish American"); *Fed. Land Bank of Wichita v. Deatherage*, 739 P.2d 905, 905 (Co. Ct. App. 1997) (rejecting defendants' claim in a mortgage foreclosure action that, based on defendants' status as "natural born sovereign individuals born in the State of Colorado but not subject to the jurisdiction thereof," the defendants could "waive their signatures" from the promissory note and mortgage, thereby cancelling the contract and divesting the court of jurisdiction).
[37] *Bank of America,* 2010 WL 626498, at *2.
[38] 825 F.Supp.2d 537, 558 (D.N.J. 2011).

what is the United States' geographical territory is facially frivolous . . . and that includes any claims related to real estate property located within the United States, collection of mortgage payments, foreclosure or eviction proceedings, etc."[39]  The reason for this holding is that the Treaty of Morocco is one of "Peace and Friendship" between Morocco and the United States and simply provides that citizens of each country will be held safe by the other.[40]  There is no language suggesting that the United States does not have jurisdiction over a person violating the law within its jurisdiction.[41]  Moreover, there is no language in that Treaty which serves to protect the citizens of either country from civil liability in the other.[42]

## VI.  CONCLUSION

Neither the Answer nor the Response sets forth a legally recognized defense to the Motion.  Therefore, the undisputed record demonstrates that LSF9 is a valid holder of the mortgage, that the Tuckers executed the mortgage, that the Tuckers have defaulted on their obligation to LSF9, and that the Tuckers owe the amount of the judgment sought.

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment in Favor of Plaintiff is **GRANTED**.

Dated: April 19, 2017
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     Lisa Keil Cartwright, Esq.
        Gregory L. Tucker
        Karen K. Tucker

---

[39] *El Ameen Bey*, 825 F.Supp. 2d at 558; *see also Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F.Supp. 2d 241, 271–72 (D.N.J. 2011) (rejecting the plaintiff's argument that the Treaty of Morocco divested the court of jurisdiction); *El-Bay v. North Carolina*, No. 5:11-CV-00423, 2012 WL 368374, at *2 (E.D.N.C. Jan. 9, 2012) (explaining that any claim based on the contention that plaintiffs are not subject to the laws of North Carolina because of their alleged Moorish nationality and the Treaty of Morocco is frivolous).
[40] *El Ameen Bey*, 825 F.Supp. 2d at 558.
[41] *Id.*
[42] *Id.*

11